UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X

In re EVERGREEN MUTUAL FUNDS            04 Civ. 4453 (RWS)
FEE LITIGATION
                                            OPINION

----------------------------------X

A P P E A R A N C E S:

        MILBERG WEISS BERSHAD
          & SCHULMAN LLP
        One Pennsylvania Plaza
        New York, NY  10119-0165
        Attorneys for Plaintiffs
        By:   JEROME M. CONGRESS, ESQ.
              JANINE L. POLLACK, ESQ.
              KIM E. MILLER, ESQ.
              MICHAEL R. REESE, ESQ.

        WOLF POPPER LLP
        845 Third Avenue
        New York, NY  10022
        Attorneys for Plaintiffs
        By:   MARIAN P. ROSNER, ESQ.
              MICHAEL A. SCHWARTZ, ESQ.
              JAMES A. HARROD, ESQ.

        MORGAN, LEWIS & BOCKIUS LLP
        101 Park Avenue
        New York, NY  10178
        Attorneys for Defendants
        By:   CHRISTOPHER P. HALL, ESQ.
              TODD D. BRODY, ESQ.
              CALI MAZZARELLA, ESQ.
              MATTHEW D. STRATTON, ESQ.

**Sweet, D.J.**

Plaintiffs, a putative class including Blanchard
D. Smith, William Smith, Sergio Grobler, Gene F. Osburn, and
Linda M. Allison (the ``Plaintiffs''), and other holders of
Evergreen Mutual Funds during the period of June 14, 1999
through November 17, 2003 (the ``Class Period'') have moved
to amend or alternatively set aside the Court's March 27,
2006 Order and the judgment entered in this action on March
28, 2006, dismissing the Complaint in its entirety.
Plaintiffs have also moved for an order granting Plaintiffs
leave to file a Second Amended Derivative Complaint.  For
the reasons set forth below, the motion is denied.

## Prior Proceedings

Plaintiffs filed their initial complaint on June
14, 2004, and an amended consolidated complaint (the
``Complaint'') on November 29, 2004.  Pursuant to Rule
12(b), Fed. R. Civ. P., Defendants moved to dismiss the
Complaint on February 15, 2005.  That motion was heard and
marked fully submitted on May 17, 2005.  In an opinion and
order dated March 24, 2006, and entered on March 27, 2006
(the ``March 2006 Order''), this Court granted Defendants'
motion and the Complaint was dismissed in its entirety.  In
re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d

2

249 (S.D.N.Y. 2006). A judgment to this effect was filed on March 28, 2006.

On April 11, 2006, pursuant to Local Civil Rule 6.3 and Rules 59(e), 60(b), and 15(a) of the Federal Rules of Civil Procedure, Plaintiffs filed this motion to: (1) amend or alternatively set aside the Court's March 2006 Order and the judgment entered in this action on March 28, 2006, which granted Defendants' motion to dismiss the Complaint in its entirety; and (2) grant Plaintiffs leave to file a second amended derivative complaint. This motion was heard and marked fully submitted on September 27, 2006.

## Dismissal of Plaintiffs' Claim for Violations of Section 36(b) of the Investment Company Act

In the Complaint, Plaintiffs had alleged violations of Section 36(b) of the Investment Company Act (the ``ICA''). Specifically, in Count Three of the Complaint, Plaintiffs had alleged that Defendants violated Section 36(b)'s proscription against the payment of excessive fees by charging Rule 12b-1 fees, soft dollar payments, and directed brokerage commissions, which allegedly benefited Defendants rather than the holders of the Funds. Defendants moved to dismiss this claim, in part, on the grounds that Plaintiffs' allegations were outside the

3

scope of Section 36(b) and that Plaintiffs had failed to allege excessive fees.

The March 2006 Order applied the standard for an excessive fee claim under Section 36(b) as articulated by the Second Circuit in <u>Gartenberg v. Merrill Lynch Asset Management, Inc.</u>, 694 F.2d 923 (2d Cir. 1982):

> `` . . . whether the fee schedule represents a charge within the range of what would have been negotiated at arm's-length in the light of all of the surrounding circumstances.'' In order to demonstrate that Section 36(b) has been violated, a plaintiff must show that ``the adviser-manager charge[d] a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered.''

<u>In re Evergreen</u>, 423 F. Supp. 2d at 257-58 (citing <u>Gartenberg</u>, 694 F.2d at 928; <u>Strougo v. BEA Assocs.</u>, No. 98 Civ. 3725(RWS), 1999 WL 147737, at *7-8 (S.D.N.Y. Mar. 18, 1999)) (internal citations omitted). It also acknowledged the six <u>Gartenberg</u> factors to be weighed in determining whether fees charged by an investment adviser were disproportionate to the services rendered, including:  ``(a) the nature and quality of services provided to fund shareholders; (b) the profitability of the fund to the adviser-manager; (c) fall-out benefits; (d) economies of scale; (e) comparative fee structures; and (f) the independence and conscientiousness of the trustees.''  <u>In re Evergreen</u>, 423 F. Supp. 2d at 258 (citing <u>Krinsk v. Fund</u>

Asset Mgmt., Inc., 875 F.2d 404, 409 (2d Cir. 1989) (citing
Gartenberg, 694 F.2d at 929-30); In Re Eaton Vance Mut.
Funds Fee Litig., 380 F. Supp. 2d 222, 237 (S.D.N.Y. 2005)
(quoting Gartenberg, 694 F.2d at 929-30)).

   Comparing the facts of this case to those asserted
in In re Goldman Sachs Mutual Funds Fee Litigation, No. 04
Civ. 2567(NRB), 2006 WL 2157069 (S.D.N.Y. Jan. 17, 2006),
and In re Eaton Vance, 380 F. Supp. 2d 222, it was concluded
that just as in those cases, Plaintiffs here had alleged
that the fees at issue were used improperly and not that the
fees themselves were excessive.  See In re Evergreen, 423 F.
Supp. 2d at 258-59.  Accordingly, it was determined that
Plaintiffs had not sufficiently alleged excessive investment
advisory fees under Section 36(b) and the cause of action
was dismissed.  Id.

## Discussion

## 1. Plaintiffs Have Failed to Meet the Standard for Granting a Motion to Reconsider Under Local Civil Rule 6.3 and Federal Rules of Civil Procedure 59(e)

### a. Applicable Standard

Motions to alter or amend judgments under Rule 59(e), Fed. R. Civ. P.,[1] and for reconsideration under Local Civil Rule 6.3[2] are evaluated under the same standard. See Word v. Croce, No. 01 Civ. 9614(LTS), 2004 WL 434038, at *2 (S.D.N.Y. Mar. 9, 2004); Williams v. New York City Dep't of Corr., 219 F.R.D. 78, 83 (S.D.N.Y. 2003); Griffin Indus., Inc. v. Petrojam, Ltd., 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999). To receive reconsideration, ``the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision.''' Word, 2004 WL 434038, at

---

[1] ``Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.'' Rule 59(e), Fed. R. Civ. P.

[2] ``A notice of motion for reconsideration or re-argument of a court order determining a motion shall be served within ten (10) days after the entry of the court's determination of the original motion, or in the case of a court order resulting in a judgment, within ten (10) days after the entry of judgment. There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked.'' Local Civ. R. 6.3.

*2 (quoting Parrish v. Sollecito, 253 F.Supp.2d 713, 715
(S.D.N.Y.2003)); see also Williams, 219 F.R.D. at 83.

Rule 59(e) of the Federal Rules of Civil Procedure
should be ``narrowly construed and strictly applied so as to
avoid repetitive arguments on issues that have been
considered fully by the Court,'' Williams, 219 F.R.D. at 83,
and ``to prevent the rule from being used as a substitute
for appealing a final judgment.'' USA Certified Merchants,
LLC v. Koebel, 273 F. Supp. 2d 501, 503 (S.D.N.Y. 2003).
Furthermore, ``[r]econsideration of a court's previous order
is an `extraordinary remedy to be employed sparingly in the
interests of finality and conservation of scarce judicial
resources.''' Montanile v. Nat'l Broad. Co., 216 F. Supp.
2d 341, 342 (S.D.N.Y. 2002) (quoting In re Health Mgmt. Sys.
Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).

### b.    The Court Did Not Overlook Controlling Law or Factual Matters Warranting a Different Outcome

In support of their motion for reconsideration,
Plaintiffs assert their allegations that the Evergreen Fund
advisory fees were excessive, and not merely wrongful, were
overlooked in the March 2006 Order.  Specifically,
Plaintiffs argue that the March 2006 Order overlooked
Plaintiffs' allegations that:  (1) the economies of scale
created by the increase in Fund investors and assets were

7

not passed on to investors (Pl.'s Mem. in Supp. 4); and (2)
the advisory fees were inflated to ``cover the challenged
payments to brokers'' (Pl.'s Mem. in Supp. 4-5). Both of
these arguments are unavailing.

First, in outlining the Plaintiffs' allegations in
the March 2006 Order, it was noted that Plaintiffs had
alleged a claim based on economies of scale: ``Defendants
allegedly failed to pass on to the shareholders any
economies of scale generated by increasing assets in the
Funds.'' In re Evergreen, 423 F. Supp. 2d at 254.  In
addition, the Plaintiffs' allegation-by-example that ``the
Defendants' compensation increased as the assets of the
Funds under its management increased as it was based upon a
percentage of assets under management'' was also
acknowledged.  Id.

Second, for purposes of Rule 59(e), Fed. R. Civ.
P., and Local Civil Rule 6.3, controlling authority is
comprised of decisions from the Second Circuit Court of
Appeals.  See Info. Superhighway, Inc. v. Talk Am., Inc.,
No. 03 Civ. 1995(RWS), 2003 WL 22705132, at *1 (S.D.N.Y.
Nov. 17, 2003) (citing Ades v. Deloitte & Touche, 843 F.
Supp. 888, 892 (S.D.N.Y. 1994)).  In support of their
motion, however, Plaintiffs have cited only to district
court cases, none of which are within the Second Circuit.
(Pl.'s Mem. in Supp. 3-4 (citing Forsythe v. Sun Life Fin.,

Inc., 417 F. Supp. 2d 100 (D. Mass 2006); In re Dreyfus Mut.
Funds Fee Litiq., 428 F. Supp. 2d 342 (W.D. Pa. 2005); Jones
v. Harris Assoc., L.P., No. 04 C 8305, 2005 WL 831301 (N.D.
Ill. Apr. 7, 2005); Wicks v. Putnam Inv. Mgmt., LLP, No.
Civ. A. 04-10988-GAO, 2005 WL 705360 (D. Mass. Mar. 28,
2005); Strigliabotti v. Franklin Res., Inc., No. C 04-00883
SI, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005)).)   Therefore,
no controlling authority warranting a different result was
overlooked.

        Furthermore, with respect to the Plaintiffs'
Section 36(b) claim, the March 2006 Order was based in large
part on the Honorable Naomi Reice Buchwald's decision in In
re Goldman Sachs Mutual Funds Fee Litigation, 2006 WL
126772.  See In re Evergreen, 423 F. Supp. 2d at 259.  In
that case, which involved allegations virtually identical to
those asserted here, Judge Buchwald determined that ``[m]ere
assertions that fees increased with the size of the Funds
are not enough to establish that the benefits from economies
of scale were not passed on to investors.''  In re Goldman
Sachs, 2006 WL 126772, at *9 (citing Kalish v. Franklin
Advisers, Inc., 742 F. Supp. 1222, 1238 (S.D.N.Y. 1990)).
In addition, Judge Buchwald reasoned that the determination
regarding the economies of scale argument in In re Goldman
Sachs was consistent with the holding in Wicks v. Putnam
Inv. Mgmt., LLC, 2005 WL 705360, one of the cases cited by
Plaintiffs in support of the instant motion as warranting a

9

different outcome.  See In re Goldman Sachs, 2006 WL 126772,
at *9 n.24 (explaining that the Wicks court specifically
noted Plaintiffs' assertion that quality of services had not
increased with the fees charged).  Therefore, while the
March 2006 Order may not have explicitly addressed the
economies of scale argument, it certainly did not overlook
controlling authority warranting a different outcome and in
fact comported its reasoning with that of other courts in
this District.

Next, Plaintiffs have failed to meet their burden
under Local Civil Rule 6.3 and Rule 59(e), Fed. R. Civ. P.,
with respect to their inflated fees argument.  First, as
Plaintiffs recognize, the Court did acknowledge the inflated
fees allegation in its March 2006 Order:  ``Plaintiffs
contend that their Section 36(b) claim can be supported with
allegations that Defendants . . . charged management fees
that were wrongfully inflated to cover other improper
revenue sharing payments that were ostensibly made from the
assets of the Investment Adviser and Distributor
Defendants.''  In re Evergreen, 423 F. Supp. 2d at 258.

Additionally, while Plaintiffs did assert in the
Complaint that the ``revenue sharing arrangements discussed
above resulted in improperly inflated fees charged to
investors with no resulting benefit to investors'' (Compl.
¶74), they failed to sufficiently establish that the fees

10

bore ``no reasonable relationship to the services
rendered.'' <u>Gartenberg</u>, 694 F.2d at 928.  As the Honorable
John G. Koetl stated in <u>In re Eaton Vance</u>:

> Because the allegations in the SAC contain no
> specific facts that would provide a factual basis
> for an allegation that the fees were ``so
> disproportionately large'' that the[y] bore ``no
> reasonable relationship to the services rendered
> and could not have been the product of arm's-
> length bargaining,'' the plaintiffs have failed to
> state a claim under 36(b).

380 F. Supp. 2d at 237 (citing <u>Gartenberg</u>, 694 F.2d at 928;
<u>Yampolsky v. Morgan Stanley Inv. Advisers, Inc.</u>, No. 03 Civ.
5710(RO), 03 Civ. 5896(RO), 2004 WL 1065533, at *2 (S.D.N.Y.
May 12, 2004); <u>ING Principal Protec. Funds Derivative
Litig.</u>, 369 F. Supp. 2d 163, 167-69 (D. Mass. 2005); <u>In re
Nuveen Fund Litig.</u>, No. 94 C 360, 1996 WL 328006, at *14-15
(N.D. Ill. June 11, 1996)).  Therefore, there was no factual
matter overlooked that would warrant a different outcome.

    Second, Plaintiffs have again failed to cite to
controlling authority (<u>i.e.</u>, any Second Circuit opinion) in
support of their inflated fees argument that was overlooked
in formulating the March 2006 Order.  (<u>See</u> Pl.'s Mem. in
Supp. 5 (citing <u>Forsythe</u>, 417 F. Supp. 2d 100).)  As with
Plaintiffs' economies of scale argument, the decision to
dismiss the Section 36(b) claim was based on the holdings of
other courts within this District in cases involving a
virtually identical allegation of inflated fees.  <u>See</u> <u>In re</u>

Evergreen, 423 F. Supp. 2d at 258-59 (citing In re Eaton
Vance, 380 F. Supp. 2d at 237-38; In re Goldman Sachs, 2006
WL 126772, at *10).

Accordingly, since Plaintiffs have not established
that controlling law or factual matters in support of either
Plaintiffs' economies of scale or inflated fees argument
were overlooked, the motion to reconsider the March 2006
Order pursuant to Rule 59(e), Fed. R. Civ. P., and Local
Civil Rule 6.3 is denied.

## 2. **Plaintiffs Have Failed to Adequately Support Consideration of the Motion Pursuant to Rule 60(b)(6)**

Plaintiffs have argued, in the alternative, that
this Court should set aside its judgment pursuant to Rule
60(b)(6) of the Federal Rules of Civil Procedure.   In
general, ``[a] motion under Rule 60(b) is addressed to the
sound discretion of the trial court.'' Velez v. Vassallo,
203 F. Supp. 2d 312, 333 (S.D.N.Y. 2002) (citing Mendell in
Behalf of Viacom, Inc. v. Gollust, 909 F.2d 724, 731 (2d
Cir. 1990)).  Nonetheless, the Second Circuit has cautioned
that Rule 60(b) provides ``extraordinary judicial relief''
to be granted ``only upon a showing of exceptional
circumstances.'' Nemaizer v. Baker, 793 F.2d 58, 61 (2d
Cir. 1986); see also Employers Mut. Cas. Co. v. Key Pharm.,
75 F.3d 815, 824-25 (2d Cir. 1996) (per curiam) (``A movant
under Rule 60(b) must demonstrate `exceptional

12

circumstances' justifying the extraordinary relief requested.'').

With respect to Rule 60(b)(6) in particular, the Second Circuit has stated:

> Rule 60(b)(6) is properly invoked when there are
> extraordinary circumstances justifying relief,
> when the judgment may work an extreme and undue
> hardship, and when the grounds for relief are not
> recognized in clauses (1)-(5) of the Rule. . . .
> Material offered in support of a motion to vacate
> under Rule 60(b)(6) must be highly convincing
> material.

D'Angelo v. State Farm Fire & Cas. Co., 32 Fed. App'x 604, 605 (2d Cir. 2002) (citing Nemaizer, 793 F.2d at 63; United States v. Cirami, 563 F.2d 26, 33 (2d Cir. 1977)).

In support of considering this motion pursuant to Rule 60(b)(6), Fed. R. Civ. P., Plaintiffs have simply asserted that ``extraordinary circumstances exist here, based upon the highly convincing evidence in support of Plaintiffs' motion, Plaintiffs' good cause for not amending the Complaint sooner, the undue hardship Plaintiffs would otherwise suffer, and the absence of hardship to Defendants.'' (Pl.'s Reply Mem. 4 (citing Briller v. Barnhart, No. 04 Civ. 3649(RWS), 2006 WL 118367, at *3 (S.D.N.Y. Jan. 16, 2006)).) Such blanket assertions of extraordinary circumstances and undue hardship are insufficient to support consideration under this rule.

13

Therefore, the alternative motion to set aside the judgment pursuant to Rule 60(b)(6), Fed. R. Civ. P., is also denied.

## 3. **Plaintiffs Motion for Leave to Amend the Complaint Cannot Be Granted**

Plaintiffs ultimately seek leave to file a second amended derivative complaint pursuant to Rule 15(a), Fed. R. Civ. P. Although Rule 15(a) states that leave to amend a complaint ``shall be freely given when justice so requires,'' it is within the sound discretion of the court whether to grant leave to amend. Rule 15(a), Fed. R. Civ. P.; John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994).

Additionally, as is the case here, once judgment has been entered, ``the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b).'' Nat'l Petrochemical Co. v. The M/T Stolt Sheaf, 930 F.2d 240, 244 (2d Cir. 1991) (quoting Cooper v. Shumway, 780 F.2d 27, 29 (10th Cir. 1985); citing Mitsubishi Aircraft Int'l v. Brady, 780 F.2d 1199, 1203 (5th Cir. 1986)). Furthermore, ``[w]hen the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion

14

more exactingly.'' <u>State Trading Corp. of India v.</u>
<u>Assuranceforeningen Skuld</u>, 921 F.2d 409, 418 (2d Cir. 1990).

Plaintiffs have moved to amend the Complaint in
order to address deficiencies in the pleadings. (<u>See</u> Pl.'s
Mem. in Supp. 12-17.) Having done so for the first time
only <u>after</u> a final judgment was entered in this case,[3]
Plaintiffs now assert that the intersection of Rules 59(e)
and 60(b) with Rule 15(a), Fed. R. Civ. P., may allow the
Court to take the proposed second amended derivative
complaint (the ``proposed SADC'') into account when deciding
whether to grant their motion to set aside or amend the
judgment. (Pl.'s Mem. in Supp. 2-3.) With regard to this
intersection between Rules 59(e) and 60(b) and Rule 15(a),
Fed. R. Civ. P., the Second Circuit has stated:

> Unless there is a valid basis to vacate the
> previously entered judgment, it would be
> contradictory to entertain a motion to amend the
> complaint. Of course, in view of the provision in
> rule 15(a) that ``leave [to amend] shall be freely
> given when justice so requires,'' it might be
> appropriate in a proper case to take into account
> the nature of the proposed amendment in deciding
> whether to vacate the previously entered judgment.

<u>Nat'l Petrochemical Co.</u>, 930 F.2d at 245 (quoting <u>Foman</u>
<u>v. Davis</u>, 371 U.S. 178, 182 (1962)).

---

[3] Plaintiffs filed an amended consolidated complaint after several cases
in this action were consolidated pursuant to the Court's order filed on
August 20, 2004.

15

While the Second Circuit did not elaborate in
National Petrochemical Company as to what would
constitute such a ``proper case'' for taking a proposed
amendment into account, the Circuit has expressed its
disapproval for granting Rule 60(b) relief in
circumstances directly relevant to granting leave to
amend pursuant to Rule 15(a):

> An argument based on hindsight regarding how the
> movant would have preferred to have argued its
> case does not provide grounds for Rule 60(b)
> relief, Nemaizer, 793 F.2d at 62, . . . nor does
> the failure to marshall all known facts in
> opposition to a summary judgment motion, Patel v.
> Lutheran Medical Ctr., 775 F. Supp. 592, 598
> (E.D.N.Y. 1991).

Paddington Partners v. Bouchard, 34 F.3d 1132, 1147 (2d
Cir. 1994); accord Am. Tissue, Inc. v. Arthur Andersen
L.L.P., No. 02 Civ. 7751(SAS), 2005 WL 712201, at *2 &
*3 (S.D.N.Y. Mar. 28, 2005) (quoting Mills v. State of
New York, No. 98 Civ. 1326, 2004 WL 433788, at *1-2
(S.D.N.Y. Mar. 10, 2004); Romania v. Wildenstein & Co.,
147 F.R.D. 62, 65 (S.D.N.Y. 1993)).

Accordingly, Plaintiffs' proposed SADC does not
provide adequate grounds for granting Plaintiffs' motion.
Balancing the ``liberal amendment policy of Rule 15(a)'' and
the ``philosophy favoring finality of judgments and the
expeditious termination of litigation,'' Nat'l Petrochemical
Co., 930 F.2d at 245 (quoting 6 C. Wright & A. Miller,

16

Federal Practice & Procedure § 1489, at 694 (1990)),
Plaintiffs' motion is denied in its entirety.

## 4. Plaintiffs' Proposed Second Amended Derivative Complaint Would Be Futile

There is little reason to believe Plaintiffs'
proposed SADC would alter the judgment dismissing the
Complaint.  While Federal Rule of Civil Procedure 15(a)
affords district courts the authority to grant leave to
amend ``when justice so requires,'' a court is free to
```deny leave to amend when it determines that amendment
would be futile.''' Krepps v. Reiner, No. 05 Civ.
0107(RWS), 2006 WL 1062135, at *1 (S.D.N.Y. Apr. 20, 2006)
(quoting McCullagh v. Merrill Lynch & Co., No. 01 Civ.
7322(DAB), 2004 WL 744484, at *2 (S.D.N.Y. Apr. 7, 2004));
accord Foman v. Davis, 371 U.S. 178, 182 (1962).  ``A
proposed amendment to a pleading would be futile if it could
not withstand a motion to dismiss pursuant to Rule
12(b)(6).'' Oneida Indian Nation of New York v. City of
Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (citing Ricciuti
v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)),
cert. granted, 124 S. Ct. 2904 (2004); see also A.V. by
Versace, Inc. v. Gianni Versace, S.p.A., 87 F. Supp. 2d 281,
298 (S.D.N.Y. 2000) (explaining that if the proposed
amendment ``would be subject to `immediate dismissal' for

failure to state a claim or on some other ground, the Court
will not permit the amendment'').

                    In Amron v. Morgan Stanley Inv. Advisors Inc.,
464 F.3d 338 (2d Cir. 2006), the Second Circuit recently
reexamined the pleading requirements for a claim under
Section 36(b).  In affirming the district court's dismissal
of the plaintiffs' Section 36(b) claims pursuant to Rule
12(b)(6), Fed. R. Civ. P., the Second Circuit reviewed the
pleading requirements for each of the six Gartenberg
factors.  Applying the Amron pleading requirements to the
Evergreen Plaintiffs' proposed SADC shows that it would not
withstand a motion to dismiss pursuant to Federal Rule of
Civil Procedure 12(b)(6) and therefore would be futile.

## a.    Nature and Quality of the Services Provided

                    In support of the first Gartenberg factor of
nature and quality of services provided, the Evergreen
Plaintiffs in their proposed SADC allege that ``performance
of these Funds was not up to par with other similar funds in
the industry'' (Proposed SADC ¶45), and that returns were
``highly correlated'' with indexes such as the S&P 500,
thereby indicating ``a level of performance that is
consistent with the passive management typical of an index
fund'' (Id. ¶46).  In Amron, however, the Second Circuit
indicated that such allegations are insufficient as a

                                18

showing of the first <u>Gartenberg</u> factor.  <u>Amron</u>, 464 F.3d at
344 (quoting <u>Migdal v. Rowe Price-Fleming Int'l</u>, 248 F.3d
321, 327 (4th Cir. 2001)).  Since all that Plaintiffs offer
in addition are broad statements by industry analysts and
commentators, their allegations are insufficient to plead a
Section 36(b) claim as to the first <u>Gartenberg</u> factor.

### b.    **Fall-Out Benefits**

Although the <u>Amron</u> plaintiffs made no allegations
as to the second and third <u>Gartenberg</u> factors of
profitability and fall-out benefits,[4] the Second Circuit
indicated that with respect to these factors, ``[f]or
obvious reasons, in establishing that fees are
disproportionate to the services provided it is essential to
allege the total amount of fees, which Plaintiffs fail to
do.''  <u>Amron</u>, 464 F.3d at 344.  The <u>Evergreen</u> Plaintiffs
fail to do so as well in their proposed SADC, thereby
rendering it deficient in its pleading of a claim under
Section 36(b).

### c.    **Economies of Scale**

With respect to the fourth <u>Gartenberg</u> factor of
economies of scale, the <u>Amron</u> court found allegations

---

[4] The Proposed SADC did not claim to make any allegations as to the
second <u>Gartenberg</u> factor of profitability.  (<u>See</u> Proposed SADC ¶28.)

19

lacking where they pointed to the size of the fees but made
``no allegations regarding the costs of performing fund
transactions or the relationship between such costs and the
number of transactions performed.'' Id. at 345 (citing
Krinsk, 875 F.2d at 411). The allegations in the Evergreen
Plaintiffs' proposed SADC are similarly lacking (see
Proposed SADC ¶¶ 30-44), thereby further contributing to its
futility.

### d.   Comparative Fee Structures

In support of the fifth Gartenberg factor of
comparative fee structures, the Evergreen Plaintiffs allege
that the fees charged were excessive relative to other
similar funds. Specifically, Plaintiffs compare the Funds'
expense ratios to the value weighted average of funds with
similar strategic objectives. (Proposed SADC ¶54.)
Assessing similar allegations made by the Amron plaintiffs,
the Second Circuit determined that such comparisons
``raise[] little suspicion under this fifth factor.''
Amron, 464 F.3d at 345 (citing Gartenberg, 694 F.2d at 929
(``If rates charged by the many other advisers were an
affirmative competitive criterion, there would be little
purpose in § 36(b).'')).

In additional support of their comparative fee
structures argument, Plaintiffs' proposed SADC contains

comparisons of the fees charged through special programs and predominantly to retirement plans, financial services firms, and other institutional investors to those charged to individual investors. (Proposed SADC ¶¶55-59.) However, as has already been observed, such comparisons are not necessarily informative when assessing whether fees are disproportionate to the services rendered. See Strougo v. BEA Assocs., 188 F. Supp. 2d 373, 384 (S.D.N.Y. 2002) (citing Schuyt v. Rowe Price Prime Reserve Fund, Inc., 663 F. Supp. 962 (S.D.N.Y. 1987), aff'd 835 F.2d 45 (2d Cir. 1987)) (``While the issue of the lower charges made by CSAM to institutional clients might in a first instance produce a triable issue, it no longer does in view of Gartenberg and Schuyt.'').

### e.    Independence and Conscientiousness of the Trustees

Finally, in support of the sixth Gartenberg factor, Plaintiffs make allegations in the proposed SADC that the Funds' directors failed to act independently and conscientiously. (Proposed SADC ¶¶88-114.) Included are allegations that the Directors ``receive handsome compensation'' (Id. ¶110), and that it is ``unlikely'' that they ``could devote the amount of time required'' due to the number of portfolios they oversee and their other high level positions with other

21

---

companies (Id.). Such allegations, however, were found to be insufficient as a matter of law by the Amron court. See Amron, 464 F.3d at 345 (citing Migdal, 248 F.3d at 330-31).

With respect to this sixth Gartenberg factor, the Amron court reiterated the ICA's express presumption that ``mutual fund trustees and natural persons who do not own 25% of the voting securities are disinterested'' and that ``a plaintiff's `burden to overcome this presumption is a heavy one.'" Amron, 464 F.3d at 344 (quoting Strougo, 188 F. Supp. 2d at 380-81). Although the Evergreen Plaintiffs make additional allegations in the proposed SADC regarding the Directors failure to ``perform their duties as `watchdogs' of the Funds'' (Proposed SADC ¶¶ 7, 88-114), such allegations are insufficient to survive a motion to dismiss a Section 36(b) claim.

As noted in the March 2006 Order:

> On a motion to dismiss a Section 36(b) claim, Plaintiffs need not assert facts supporting each of the six Gartenberg factors. However, . . . Plaintiffs must cite some facts in support of the claim that the fees at issue were so disproportionately large that they bore no relationship to the services rendered.

In re Evergreen, 423 F. Supp. 2d at 258 (citing Gartenberg, 694 F.2d at 928-30; Strougo v. Scudder, Stevens, & Clark, Inc., 964 F. Supp. 783, 805 (S.D.N.Y. 1997)). In their

proposed SADC, Plaintiffs have attempted to allege facts in
support of five out of the six Gartenberg factors.  Based on
the Second Circuit pleading standards enunciated in Amron
and the ``more exacting'' discretion afforded when a motion
to amend the complaint follows a judgment, State Trading
Corp., 921 F.2d at 418, Plaintiffs have not alleged
sufficient facts to support even one of the Gartenberg
factors.  The proposed SADC would not survive a motion to
dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., and
would therefore be futile.

## Conclusion

For the foregoing reasons, under the authorities
cited, and despite misgivings, Plaintiffs' motion to amend
or alternatively set aside the judgment under Local Civil
Rule 6.3 and Rules 59(e) or 60(b) of the Federal Rules of
Civil Procedure is denied.  Therefore, because the judgment
stands, Plaintiff's motion for leave to file a second
amended derivative complaint pursuant to Rule 15(a) of the
Federal Rules of Civil Procedure is also denied.

It is so ordered.

**New York, N.Y.**
**February** ⟋ **, 2007**

**ROBERT W. SWEET**
**U.S.D.J.**